NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SALEM STEEL NORTH AMERICA, LLC, | Hon. Dennis M. Cavanaugh |
| | OPINION |
| Plaintiff, | Civil Action No. 08-CV-4827 (DMC) |
| v. | |
| SHANGHAI SHANGSHANG STAINLESS STEEL PIPE CO., LTD., | |
| Defendant. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Defendant Shanghai Shangshang Stainless Steel Pipe Co., Ltd. ("Shangshang") to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After considering the submissions of the parties, and based upon the following, Shangshang's motion to dismiss is **denied**.

I.   **BACKGROUND**[1]

Plaintiff, Salem Steel North America, LLC ("Salem"), is a New Jersey limited liability corporation with its corporate headquarters in Passaic, New Jersey. Salem imports and supplies various types of steel pipe, tubes, and related products. In March 2005, Salem representatives

---

[1] The facts set-forth in this Opinion are taken from the parties' statements in their respective moving papers.

traveled to China to meet with individuals at several Chinese steel mills to discuss the purchase of stainless steel pipe and tubes for resale in the United States.  During the trip, representatives of Salem met with personnel from Shangshang to discuss Shangshang's "capabilities for stainless steel pipe and tubes, its product line and pricing structure, and Salem's business of importing stainless steel pipe and tubes for re-sale to the United States based companies."  Salem subsequently placed orders with Shangshang for stainless steel pipe to be shipped to the United States.

During 2006, Salem ordered in excess of 500,000 pounds of stainless steel pipe from Shangshang to satisfy a purchase order from the Greenville Tube Company ("Greenville"). Greenville was initially satisfied with the pipe quality, but by late 2006 was apparently experiencing "increasing problems with the Shangshang pipe."  As a result, Salem amended its orders with Shangshang to require ultrasonic testing for all pipe prior to shipment.  In May 2007, however, Greenville notified Salem that it was continuing to experience problems with Shangshang's pipe.  Soon thereafter, Greenville's president notified Salem that it would stop using Shangshang pipe due to "severe problems."  On September 19, 2007, Salem sent Shangshang a "Customer Complaint Mill Claim Report" concerning the defective pipe.

In late 2006, Salem also began processing orders for Plymouth Tube Company ("Plymouth").  Salem amended the purchase orders in February 2007 to include the ultrasonic testing requirement.  Shangshang subsequently shipped 652,893 pounds of pipe to Salem.  On May 23, 2007, Plymouth informed Salem that it was also experiencing problems with the Shangshang pipe.  Salem subsequently sent two "Customer Complaint Mill Claim Reports" to

Shangshang concerning the defective pipe shipped to Plymouth.

On June 6, 2007, Harrison Yu ("Yu"), Shangshang's Shanghai-based sales manager, sent an e-mail to Salem's representatives in New Jersey advising them that he had discussed the defective pipe with Mr. Ji Xuewen ("Ji), Shangshang's president, and that they would travel to the United States for further investigation. Salem later received a "Quality Problem Report" from Shangshang acknowledging: "At last, sorry for this unexpected quality problem, our people will come user's site check the problem and will solve this problem best way." Ji and Yu traveled to Salem's corporate offices in Passaic, New Jersey on June 29, 2007, to discuss Shangshang's failure to perform the ultrasonic testing on the pipe. Ji and Yu promised an investigation into the pipe's quality upon returning to China.

On July 20, 2007, Yu sent an e-mail to Salem's representatives in New Jersey attaching a letter on Ji's behalf concerning the defective pipes. The letter stated that Shangshang would take responsibility for the loss caused by the defective pipes, and that Shangshang would reorganize its quality department and fire those responsible for the testing failures. On September 12, 2007, Salem forwarded to Shangshang a letter sent by Plymouth specifying its damages as a result of the defective pipe. Shangshang allegedly ignored the letter.

Salem filed an eight count Complaint in this Court on September 26, 2008 alleging claims for breach of contract, fraud, negligent misrepresentation, and tortious interference with a contract. Currently before the Court is Shangshang's motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

## II.   STANDARD OF REVIEW

"It is well-established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 457 (3d Cir. 2003). When a jurisdictional defense is raised by a defendant, however, the burden falls on the plaintiff to come forward with sufficient facts to establish that jurisdiction is proper. See Carteret Sav. Bank v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992). The plaintiff satisfies this burden by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." See Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992).

## III.   DISCUSSION

Before the Court is Shangshang's motion to dismiss the Complaint pursuant to Rule 12(b)(2) for lack of personal jurisdiction. Shangshang argues that it does not have sufficient contacts with New Jersey to satisfy constitutional requirements because its dealings with Salem and New Jersey were merely "isolated incidents" constituting "only a minor part" of its sales, and because it does not solicit or otherwise maintain business operations in New Jersey. Salem responds that Shangshang does have sufficient contacts with New Jersey because, *inter alia*, Shangshang directed numerous communications regarding the contracts to Salem's representatives in New Jersey; Shangshang's president and sales manager visited Salem's corporate offices in New Jersey to address pipe quality issues; and Shangshang derived a significant portion of its total sales, approximately 6%, from its business dealings with Salem, a New Jersey corporation. Because the Court finds that Shangshang does have sufficient contacts

4

with New Jersey to satisfy constitutional requirements, its motion to dismiss is denied.

Federal courts seeking to exercise personal jurisdiction over a defendant must undertake a two-step inquiry. First, the court must apply the relevant state long-arm statute to determine whether jurisdiction is permitted; second, the court must determine whether exercising jurisdiction over the defendant violates due process. See IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 258–59 (3d Cir. 1998). Because New Jersey's long-arm statute permits jurisdiction to the fullest limits of due process, however, this Court need only consider whether exercising jurisdiction is consistent with the principles of due process. See id.

The constitutionality of exercising personal jurisdiction depends upon "the relationship among the defendant, the forum, and the litigation." See id. at 259 (citing Shaffer v. Heitner, 433 U.S. 186, 204 (1977)). The defendant need not be physically present in the forum provided it has either "purposefully directed [its] activities toward residents of the forum state," or otherwise "purposefully availed [itself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Id. at 259 (internal citations omitted). Where, as here, the plaintiff's cause of action arises out of particular contacts occurring between the defendant and the forum, the court must determine: (1) whether the defendant has constitutionally sufficient "minimum contacts" with the forum; and (2) whether exercising jurisdiction comports with "traditional notions of fair play and substantial justice." See id.; see also Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).[2]

---

[2] Personal jurisdiction may exist under a theory of either general or specific jurisdiction. Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001). Because the Court finds that Shangshang did not

1.  Minimum Contacts

The minimum contacts analysis essentially boils down to a two-part test: (1) the litigation must "arise out of or relate to" at least one of the defendant's contacts with the forum, see D'Jamoos v. Pilatus Aircraft Ltd., 2009 WL 1332304, at *5 (3d Cir. Mar. 5, 2009); and (2) the defendant must have "purposefully directed [its] activities" at the forum so as to avail itself of the privileges of the forum's laws, such that the defendant could reasonably anticipate being involved in a litigation in the forum. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985). While contracting with a forum resident may provide a basis for personal jurisdiction, merely signing on does not "automatically establish sufficient minimum contacts in the other party's forum." See Grand Entm't Group v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993). Rather, courts must consider "prior negotiations and contemplated future consequences." See Burger King, 471 U.S. at 479; Mellon Bank, 960 F.2d at 1224 (considering "prior negotiations and contemplated future consequences" as part of a "highly realistic" approach to analyzing minimum contacts). Mail and telephone communications sent by the defendant into the forum may also contribute to a finding of minimum contacts. See Grand Entm't Group, 988 F.2d at 482; Carteret Sav. Bank, 954 F.2d at 147–48 (finding sufficient contacts where defendant made telephone calls and sent correspondence to New Jersey, and attended a meeting in New Jersey).

Here, Salem alleges that Shangshang has sufficient contacts with New Jersey to satisfy

---

maintain "continuous and systematic" contacts with New Jersey, however, the Court will discuss specific jurisdiction only. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984).

constitutional standards because: (1) Shangshang agreed to fulfill Salem's requests for steel by countersigning Salem's purchase orders and e-mailing or faxing them to Salem in New Jersey; (2) Shangshang's international sales manager, Harrison Yu, negotiated with Salem's New Jersey-based representatives "all quantity, quality, pricing, testing, and delivery terms"; (3) Shangshang sent "numerous communications" pertaining to pending and future steel orders to Salem's corporate headquarters in Passaic, New Jersey; (4) representatives of Shangshang, including its president, visited Salem's Passaic, New Jersey headquarters to discuss quality problems; (5) Shangshang sold approximately 814,000 pounds of steel worth approximately $2.2 million to Salem, accounting for roughly 6% of its total sales; and (6) Shangshang used Salem, a New Jersey corporation, as a distributor for its products. The Court agrees.

First, the Court finds that Salem's breach of contract and tort claims arise directly out of, and are related to, Shangshang's communications with Salem's representatives in New Jersey. See, e.g., Grand Entm't Group, 988 F.2d at 483. A foreign defendant who voluntarily negotiates with a forum resident "cannot [later] complain about answering a suit concerning the effect of negotiations in the jurisdiction in which some of those negotiations occurred." Id. Here, Shangshang's intentional and voluntary decision to negotiate contract terms with Salem, a New Jersey corporation, combined with its follow-up communications sent via e-mail and fax to Salem's New Jersey corporate offices, are actions that are related to and give rise to the underlying breach and tort claims, thereby establishing sufficient contacts between Shangshang and the forum to support jurisdiction.

Second, the Court finds that Shangshang purposefully directed its activities towards New

7

Jersey.  In Grand Entm't Group, for example, the Third Circuit determined that the foreign defendants "deliberately and purposefully directed significant activities" toward the forum by directing "at least twelve communications to the forum" and by engaging in "negotiations for an agreement that would have created rights and obligations among citizens of the forum and contemplated significant ties with the forum."  Id. at 482–83; see also Telecordia Tech. Inc. v. Telekom SA Ltd., 458 F.3d 172, 178 (3d Cir. 2006).  Here, neither party disputes that Salem's representatives initially solicited Shangshang's business.  Nonetheless, upon reaching an agreement, Shangshang directed significant activities towards New Jersey, including selling a substantial amount of steel to New Jersey-based Salem, communicating extensively with Salem about the steel orders by sending e-mail and fax communications to their corporate offices in New Jersey, and by sending its president and international sales manager to New Jersey to discuss pipe quality issues.  Accordingly, because Shangshang "deliberately and personally" directed significant activities toward New Jersey, and because Shangshang engaged in a robust, mutually beneficial business relationship with a New Jersey-based corporation, the Court finds that Shangshang availed itself of the laws of this state, and thus that minimum contacts exist.[3]

    2.    Fairness

Having found sufficient contacts tying Shangshang to the forum, the court must next

---

[3] Nor is Shangshang's lack of a "physical presence" in New Jersey fatal to the Court's exercise of personal jurisdiction.  See, e.g., Burger King, 471 U.S. at 476 ("[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted.  So long as a commercial actor's efforts are purposefully directed toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.").

8

consider whether exercising jurisdiction comports with "traditional notions of fair play and substantial justice."  See Int'l Shoe Co., 326 U.S. at 316.  In making this determination, the Court considers: (1) the burden on the defendant; (2) the interests of the forum; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies.  See Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113 (1987).  The Court must also consider the burden of forcing Shangshang to defend a lawsuit in a foreign land.  See Grand Entm't Group, 988 F.2d at 483.  The Court is mindful, however, that "[w]hen minimum contacts have been established, often the interests of jurisdiction will justify even the serious burdens placed on the alien defendant."  Id.

  Here, the court finds that exercising jurisdiction over Shangshang is reasonable and comports with "traditional notions of fair play and substantial justice."  Shangshang derived approximately 6% of its annual sales by engaging with a New Jersey-based company, making it plainly foreseeable that Shangshang could eventually be brought before a New Jersey court.  Furthermore, Shangshang has previously demonstrated an ability and willingness to travel to New Jersey to resolve disputes arising under the contract.  New Jersey also has an interest in ensuring that business contracts entered into by its residents are fully complied with and enforced.  Finally, no evidence exists supporting a finding that another state would better serve the litigants' rights. That is, litigating this breach of contract case in Louisiana or Arkansas (where Plymouth and Greenville are based) would be no more or less convenient for Shangshang than litigating in New Jersey.  Accordingly, because the Court finds that Shangshang has

sufficient contacts with New Jersey to support jurisdiction, and because the Court finds that asserting jurisdiction over Shangshang is fair and reasonable, Defendant's motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction is **denied**.

## IV.  CONCLUSION

For the reasons stated, Shangshang's motion to dismiss is **denied**.  An appropriate Order accompanies this Opinion.

S/ Dennis M. Cavanaugh<br>
Dennis M. Cavanaugh, U.S.D.J.

Date:      June   10  , 2009
Orig.:     Clerk's Office
cc:        All Counsel of Record
           Hon. Mark Falk, U.S.M.J.
           File